<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| LUIS F. RODRIGUEZ, VIVIAN C. RODRIGUEZ, VILU CONSTRUCTION, and TRUMBULL STREET BUSINESS CENTER, LLC, | : : : : | |
| Plaintiffs, | : | Civil Action No. 06-4996 (JAG) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| RAFAEL J. FAJARDO, individually; THE BOARD OF EDUCATION OF THE CITY OF ELIZABETH; ARMANDO DA SILVA, individually; RAUL BURGOS, individually; CARLOS CEDENO, individually; FRANCISCO GONZALEZ, individually; CAROL CASCIO, individually; MADINAH A. HAWKINS, individually; KATHY L. MOORE, individually; EDWARD WHELAN, individually, | : : : : : : : : : : : : | |
| Defendants. | : | |

| | | |
|---|---|---|
| | : | |
| THE BOARD OF EDUCATION OF THE CITY OF ELIZABETH, | : : | |
| | : | |
| Third-Party Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| THE CITY OF ELIZABETH and THE CITY COUNCIL OF ELIZABETH, | : : | |
| | : | |
| Third-Party Defendants. | : | |
| | : | |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on (1) Plaintiffs'[1] motion seeking the issuance of a default judgment as to Defendants Rafael J. Farjado, Armando DaSilva, Raul Burgos, Carlos Cedeno, and Francisco Gonzalez, pursuant to FED. R. CIV. P. 55(b)(2); and (2) Defendants'[2] motion to dismiss Plaintiffs' Complaint, pursuant to FED. R. CIV. P. 12(b)(6).  For the reasons set forth below, Plaintiffs' motion for default judgment will be denied, and Defendants' motion to dismiss will be granted.

## I.  INTRODUCTION

On October 18, 2006, Plaintiffs filed this action against Defendants, asserting causes of action against Defendants for (1) violation of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983; (2) tortious interference with a contractual relationship; (3) defamation of Plaintiff Luis Rodriguez; (4) and violation of the New Jersey School Ethics Act.

On December 22, 2006, the Elizabeth Board of Education filed an Answer, Counterclaim, and Third-Party Complaint.  The Board of Education's Counterclaim against the Plaintiffs asserts causes of action for (1) violation of constitutional rights; (2) conspiracy to violate constitutional rights; and (3) malicious abuse of process.  The Board of Education's Third-Party Complaint asserts a claim against Third-Party Defendants the City of Elizabeth (the "City") and the City

---

[1]Plaintiffs in this action are Luis F. Rodriguez, Vivian C. Rodriguez, Vilu Construction ("Vilu"), and Trumbull Street Business Center, LLC ("TSBC") (collectively, "Plaintiffs").

[2]Defendants in this action are the Board of Education of the City Elizabeth (the "Elizabeth Board of Education," or "Board of Education," or "Board"), Rafael J. Fajardo, Armando Da Silva, Raul Burgos, Carlos Cedeno, Francisco Gonzalez, Carol Cascio, Madinah A. Hawkins, Kathy L. Moore, and Edward Whelan (collectively, "Defendants").

Council of Elizabeth (the "City Council") for indemnification and contribution.

On January 17, 2007, without first requesting that the Clerk of this Court enter a default, Plaintiffs filed a motion for default judgment against Defendants Fajardo, Da Silva, Burgos, Cedeno, and Gonzalez, pursuant to FED. R. CIV. P. 55(b)(2).

On January 18, 2007, Defendants filed a motion to dismiss Plaintiffs' Complaint, pursuant to FED. R. CIV. P. 12(b)(6).  Defendants' motion is made on the grounds that (1) Defendants' alleged conduct was not the proximate cause of Plaintiffs' alleged damages; (2) Plaintiffs have failed to allege the violation of a constitutional right; (3) the individual Defendants cannot be held personally liable because they did not participate in the alleged wrongful conduct; (4) Plaintiffs' claims against the individual defendants in their official capacities are duplicative of their claims against the Board; and (5) Plaintiff Luis Rodriguez cannot state a cause of action for defamation under § 1983.

## II.  FACTUAL BACKGROUND

Plaintiffs allege that on or about December 4, 2000, the City entered into a contract (the "Contract")  with the New Jersey Transit Corporation (the "NJTC") to purchase property located at 801-871 Livingston Street in Elizabeth, New Jersey (the "Property").  (Compl., ¶ 9.)  The Contract purportedly required the City to assume full responsibility for any environmental investigation or remediation obligations concerning the property, pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, et seq., and the New Jersey Spill Compensation and Control Act, N.J. STAT. ANN. §§ 58:10-23.1b, et seq.  (Id.)

The City and the NJTC agreed that the fair market value of the Property, absent environmental contamination cleanup costs, as well as any diminution of value as a result of the

3

contamination, was $1,095,000.  (Id., ¶ 10.)  The Contract listed the purchase price for the sale of

the Property to the City at $520,000.  (Id., ¶ 11.)  The purchase terms also included a credit of

$575,000 against the fair market value of the property, in exchange for the City's assumption of

all future environmental clean-up costs associated with the Property.  (Id.)  The Contract required

that any individual who purchased the Property from the City provide a bank letter of credit in

the amount of $575,000, i.e., the price of the estimated future environmental clean-up costs

associated with the Property.  (Id., ¶ 12.)

On or about January 11, 2001, the City published a request for proposals for the

redevelopment of a portion of the Trumbull Street Redevelopment Area (the "Site"), which was

slightly less than six acres of property, and included frontage on East Grand, Livingston, and

Division Streets.  (Id., ¶ 13.)  The Site included the Property.  (Id.)

On or about September 25, 2001, Plaintiff Vilu Construction ("Vilu"), which, along with

TSBC, was and is owned by Plaintiffs Luis Rodriguez and Vivian Rodriguez, presented a

proposal to the City for the redevelopment of the Site.  (Id., ¶¶ 3, 14.)  Vilu's proposal included

an offer to purchase the Property at the City's cost, including the acquisition expenses incurred

by the City.  (Id., ¶ 14.)

Also on or about September 25, 2001, the City Council allegedly adopted a resolution

designating Vilu as the redeveloper of the Site.  According to Plaintiffs, the City Council's

resolution provided that Vilu would pay the City the cost and expenses incurred in its acquisition

of the Property, and Vilu would also assume responsibility for the remediation of any

environmental issues associated with the Site.  (Id., ¶ 15.)  The resolution allegedly provided that

the Property would be conveyed to Plaintiffs upon execution of a Redevelopment Agreement.

(Id.)  Plaintiffs allege that on or about September 25, 2001, pursuant to the resolution, Vilu and the City commenced negotiations on the terms of the Redevelopment Agreement.  (Id., ¶ 16.)

On or about December 5, 2002, Plaintiffs acquired a tract of land adjacent to the Property through South Park Commercial Center, LLC ("South Park"), an entity of which Plaintiffs are the sole owners.  (Id., ¶ 17.)  After Plaintiffs' purchase of the adjacent land, the City, having determined that the Site and the adjacent land presented a unique opportunity to provide a supermarket for the citizens of Elizabeth, urged Plaintiffs to develop both the Site and the adjacent land as one property.  (Id., ¶¶ 18, 19.)

From approximately 2003 through 2006, Plaintiffs allegedly unsuccessfully communicated and negotiated with numerous owners and operators of chain supermarkets in an attempt to arrange for a supermarket on the Property.  (Id., ¶ 20.)  Throughout these negotiations, Plaintiffs engaged engineers, architects, and other professionals to support their efforts to place a supermarket on the Property.  (Id.)  During this time, Plaintiffs also purchased another parcel of land, which was included in the Site.  (Id., ¶ 21.)

On or about December 13, 2004, the City Council amended the resolution they had adopted on September 25, 2001, to change the name of the redeveloper from Vilu to TSBC, both of which are entities owned by Plaintiffs.  (Id., ¶ 22.)  During the period from September 2001 through December 2005, Plaintiffs were in constant communication with the City, and kept the City informed of its development attempts.  (Id., ¶ 23.)

On or about November 2005, Plaintiffs and the City concluded their negotiations of the terms of the Redevelopment Agreement.  (Id., ¶ 24.)  Then, in accordance with the September 25, 2001 resolution, on or about December 27, 2005, the City Council adopted an Ordinance, which

5

approved and authorized the sale of the Property to TBSC for $520,000.  (Id., ¶ 25.)  On or about

January 31, 2006, the City purportedly was prepared to convey the Site to Plaintiffs.  (Id., ¶ 28.)

Also on or about January 31, 2006, the Board of Education instituted an action in the

Superior Court of New Jersey, Union County, to enjoin the sale of the Site to the Plaintiffs.[3]  (Id.,

¶¶ 29, 30.)  The suit resulted in the temporary restraint of the sale of the Site to Plaintiffs.  (Id, ¶

34.)  Plaintiffs allege that there was no reasonable basis for the Board's lawsuit, and that the

Board did not have adequate funds, and had never sought to acquire the Site from the City prior

to its commencement of their suit against Plaintiffs.  (Id., ¶¶ 35-39.)  According to Plaintiffs, the

Board's lawsuit was motivated primarily by personal political considerations of the Board

members, and was purposefully aimed at harming Plaintiffs' development efforts.  (Id., ¶¶ 40,

42-43.)

Plaintiffs further allege that in the May 19, 2006 edition of a local, Spanish-language

newspaper, *El Mensaje*, Defendant Fajardo published a paid advertisement falsely stating that

Luis Rodriguez had offered him 10% of the Site property if Fajardo would desist his efforts to

obtain the Property.  (Id., ¶ 41.)  According to Plaintiffs, Luis Rodriguez never made such an

offer to Fajardo.  (Id.)

Plaintiffs allege that the City rescinded the Redevelopment Agreement with Plaintiffs as a

result of the lawsuit filed by the Board, and the actions of the Board-member Defendants,

Fajardo, DaSilva, Burgos, Cedeno, Gonzalez, Cascio, Hawkins, Moore, and Whelan.  (Id., ¶ 31.)

---

[3]The action is styled as Elizabeth Board fo Education v. Trumbull Street Business Center
LLC, Luis Rodriguez, Vivian Rodriguez, et al, Docket No. UNN-L-0435-06.

### III. DISCUSSION

**A.     Plaintiffs' Motion For Default Judgment Against the Individual Defendants**

Plaintiffs have moved this Court for a default judgment against the individual Defendants in this action, pursuant to FED. R. CIV. P. 55(b)(2).  "Prior to the issuance of a default judgment under Rule 55(b), there must be an entry of default pursuant to Rule 55(a)."  Tarbell v. Jacobs, 856 F. Supp. 101, 104 (N.D.N.Y. 1994) (citing 10 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2682 (1983)); see also DeTore v. Local No. 245 of Jersey City Public Emp. Union, 511 F. Supp. 171, 176 (D.N.J. 1981) ("no default judgment may be entered under either F.R.Civ.P. 55(b)(1) or (b)(2) unless a default has previously been entered by the clerk under 55(a).  Thus, the entry of default is an essential predicate to any default judgment").  Here, Plaintiffs never made an application to have the Clerk of the Court enter a default against any of the Defendants against whom they now seek default judgment.  Because Plaintiffs never made a proper application for entry of default, no default was entered against any Defendant.  Because no default has been entered, Plaintiffs' motion for default judgment against the individual Defendants is procedurally improper, and must be denied.

**B.     Defendants' Motion to Dismiss**

**1.     *Legal Standard Governing Motions To Dismiss Under Rule 12(b)(6)***

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1959 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the decision in other respects).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss

does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 127 S. Ct. at 1959. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id.

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1960 (abrogating Conley, 355 U.S. 41). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000).

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See Morse v. Lower Merion School District, 132 F.3d 902, 906 n.8 (3d Cir. 1997). All reasonable inferences, however, must be drawn in the plaintiff's favor. See Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). Moreover, the claimant must set forth sufficient information to outline the elements of his or her claims or to permit inferences to be drawn that the elements exist. See FED. R. CIV. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 45-46, abrogated on other grounds. "The defendant bears the burden of showing that no claim has

8

been presented." <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir. 2005).

This Court's review of a motion to dismiss for failure to state a claim is limited to the contents of the complaint, including any attached exhibits.  See <u>Kulwicki v. Dawson</u>, 969 F.2d 1454, 1462 (3d Cir. 1992); <u>Caine v. Hardy</u>, 943 F.2d 1406, 1411 n. 5 (5th Cir. 1991).

>           **2.**       ***Whether Plaintiffs Have Adequately Alleged That Defendants Were The***
>
>                    ***Proximate Cause of Their Alleged Damages***

Defendants first argue that the "undisputed facts" show that Defendants were not the proximate cause of any damages to Plaintiffs.  Defendants specifically argue that any proximate cause which might have existed has been negated by superseding causes of the alleged injury to Plaintiffs - the alleged conduct of the New Jersey Superior Court restraining the sale of the property; the City's revocation of the redeveloper designation; and the agreement of TSBC not to contest the City's decision to revoke the redeveloper designation.  In sum, Defendants in this case do not contend that Plaintiff has failed to allege that Defendants were the proximate cause of their purported injuries.  Rather, Defendants contend that the facts alleged in the Complaint cannot support a finding of proximate cause.

"Proximate cause is an essential element of a claim seeking to establish liability under § 1983." <u>Tallman v. Barnegat Bd. of Educ.</u>, 43 Fed. Appx. 490, 498-499 (3d Cir. Aug. 21, 2002) (citing <u>Martinez v. California</u>, 444 U.S. 277 (1980)).  "Courts have generally found that proximate cause under § 1983 simply incorporates the causation principles of common-law torts." <u>Tallman</u>, 43 Fed. Appx. at 499 n.6 (citing <u>Stevenson v. Koskey</u>, 877 F.2d 1435 (9th Cir. 1989); <u>Parrett v. City of Connersville</u>, 737 F.2d 690 (7th Cir. 1984)).

"While the concept of proximate cause is somewhat amorphous, the common law is clear

that certain intervening events - otherwise called 'superseding causes' - are sufficient to sever the causal nexus and cut off all liability."  Archer v. Warner, 538 U.S. 314, 326-327 (2003) (internal citation omitted).  "'The doctrine of superseding cause is . . . applied where the defendant's [conduct] in fact substantially contributed to the plaintiff's injury, but the injury was actually brought about by a later cause of independent origin that was not foreseeable.'"  Exxon Co. v. Sofec, Inc., 517 U.S. 830, 837 (1996) (1 T. Schoenbaum, ADMIRALTY AND MARITIME LAW § 5-3, pp. 165-166 (2d ed.1994)).  "Thus, a third party's act is an intervening, superseding cause if it was either unforeseeable, or was foreseeable but conducted in an extraordinarily negligent manner."  Phifer v. Du Pont Country Club, Inc., 138 Fed. Appx. 446, 448-449 (3d Cir. July 7, 2005) (quotation marks and citation omitted).

"Proximate causation, including the question of superseding cause, however, is ordinarily a question of fact for the jury."  Rieser v. District of Columbia, 563 F.2d 462, 480 (D.C. Cir. 1977) (citing Milwaukee & St. P. Ry. v. Kellogg, 94 U.S. 469, 474-75 (1877); Hicks v. United States, 511 F.2d 407, 420-22 (D.C. Cir. 1975); RESTATEMENT (SECOND) OF TORTS § 434 (1965).  See also Exxon, 517 U.S. at 840-41 (holding that "[t]he issues of proximate causation and superseding cause involve application of law to fact, which is left to the factfinder") (citation omitted).  "[O]nly if it is absolutely clear that the [defendant's conduct] could not have been a proximate cause [of the harm asserted by the plaintiff] is it a question of law."  Boodoo v. Cary, 21 F.3d 1157, 1161 (D.C. Cir. 1994) (internal quotation marks and citation omitted).

In the Complaint, Plaintiffs allege that on or about January 31, 2006, the City was prepared to convey the Site to Plaintiffs.  (Compl., ¶ 28.)  The Complaint further alleges, however, that also on or about January 31, 2006, the Board of Education instituted an action in

the Superior Court of New Jersey, Union County, to enjoin the sale of the Site to the Plaintiffs. (Id., ¶¶ 29, 30.) Plaintiffs allege that as a result of this suit by the Board, the Superior Court restrained the sale of the Site, and the City was prompted to rescind its development agreement with Plaintiffs. (Id., ¶¶ 31, 34.)

On its face, the Complaint alleges that Defendants' action in instituting the suit in Superior Court prompted the result they sought - an injunction halting the sale of the Site to Plaintiffs. This result, imposed by the Superior Court, was foreseeable by Defendants when they instituted the suit; it was the relief Defendants sought. Moreover, it does not appear that the Court entered its order negligently. The Superior Court's order does not fall within the definition of a "superseding cause," and does not negate proximate cause as a matter of law. See Phifer, 138 Fed. Appx. at 448-449.

This Court also cannot find that the City's decision to revoke the sale of the Site to Plaintiffs was a superseding cause of Plaintiffs' injuries, negating proximate cause. It was arguably foreseeable that a suit enjoining the sale of the Site to Plaintiffs might prompt the City, which had an interest in effectuating the sale and moving forward with the development of the land, to revoke their agreement to sell the Site to Plaintiffs. Whether or not the City's conduct was foreseeable is a question of fact for the jury, and therefore cannot justify dismissal under Rule 12(b)(6). Rieser, 563 F.2d at 480; Boodoo, 21 F.3d at 1161.[4]

---

[4]As noted, *supra*, Defendants also argue that TSBC's alleged decision not to challenge the City's conduct revoking the sale operated as a superseding cause negating proximate cause. This Court cannot find that such an argument warrants dismissal, pursuant to FED. R. CIV. P. 12(b)(6). As this Court has explained, in ruling on a Rule 12(b)(6) motion, this Court is limited to the contents of the Complaint. Kulwicki, 969 F.2d at 1462. Because no allegation regarding TSBC's inaction is set forth in the Complaint, such inaction, even if it transpired, cannot support dismissal of Plaintiffs' claims under Rule 12(b)(6). Moreover, even if the Complaint did contain

Based on the allegations in the Complaint, this Court cannot find that dismissal of Plaintiffs' claims is warranted based on Defendants' arguments concerning proximate cause. The Complaint adequately alleges that Defendants were the proximate cause of Plaintiffs' injuries.

### 3.   *Whether Plaintiffs Have Adequately Alleged The Violation of a Constitutional Right Sufficient To Support Their First Cause of Action Under § 1983*

Defendants next argue that Plaintiffs' first cause of action under § 1983 must be dismissed because they have failed to allege a violation of a constitutional right.  Plaintiffs counter that Defendants violated their protected property interest in the Site.  Plaintiffs specifically have alleged that Defendants deprived them of their "protectible property interest in the[ir] designation as the redeveloper with the City under the Fourteenth Amendment of the United States."  (Compl., ¶¶ 33-4.)  The central question posed by Defendants' motion is whether the City Council's adoption of an Ordinance approving and authorizing TBSC to redevelop the Site according to the terms of the Redevelopment Agreement created a protectible property interest.

"In order to state a claim under § 1983 , a plaintiff must allege that his constitutional rights were violated by someone acting under color of state law."  Jerrytone v. Musto, 167 Fed. Appx. 295, 300 (3d Cir. Jan. 23, 2006) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).  The

---

an allegation that TSBC did not challenge the City's decision to revoke the sale of the Site to Plaintiffs, whether such inaction constituted an unforeseeable superseding cause of Plaintiffs' injuries is a question of fact for the jury, and cannot justify dismissal at this juncture.  Rieser, 563 F.2d at 480; Boodoo, 21 F.3d at 1161.

Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property without due process of law."  U.S. CONST. AMEND. XIV.  "To prevail on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and capricious act deprived them of a protected property interest."  County Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 165 (3d Cir. 2006) (quoting Taylor Inv., Ltd. v. Upper Darby Twp., 983 F.2d 1285, 1292 (3d Cir. 1993)).

"That rights in property are basic civil rights has long been recognized."  Lynch v. Household Finance Corp., 405 U.S. 538, 552 (1972) (citing J. Locke, OF CIVIL GOVERNMENT 82-85 (1924); J. Adams, A DEFENCE OF THE CONSTITUTIONS OF GOVERNMENT OF THE UNITED STATES OF AMERICA, in F. Coker, DEMOCRACY, LIBERTY, AND PROPERTY 121-132 (1942)).  "Congress recognized these rights in 1871 when it enacted the predecessor of §§ 1983 and 1343(3)."  Lynch, 405 U.S. at 552.

As the Supreme Court has held, property interests "are not created by the Constitution;" "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).

Significantly, however, the Roth Court also found that "[t]o have a property interest . . . , a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  Id. at 577.

Here, Plaintiffs essentially allege that they have a protectible property right by virtue of

13

their quasi-contractual redevelopment deal with the City, pursuant to which the City designated them as the redeveloper of the Site.[5]  "Today it is beyond dispute that a contract with a state entity can give rise to a property right protected under the Fourteenth Amendment."  Unger v. National Residents Matching Program, 928 F.2d 1392, 1397 (3d Cir. 1991) (citing Perry v. Sindermann, 408 U.S. 593, 599-601 (1972)).  "Nevertheless, the Supreme Court has never held that every state contract gives rise to a property interest protected under the Fourteenth Amendment."  Unger, 938 F.2d at 1397.  "[I]f every breach of contract by someone acting under color of state law constituted a deprivation of property . . . , the federal courts would be called upon to pass judgment on the [ ] fairness of the processing of a myriad of contractual claims against public entities . . . [S]uch a wholesale federalization of state public contract law seems fair afield from the great purposes of the due process clause."  Reich v. Beharry, 883 F.2d 239, 242 (3d Cir. 1989).

"Even though every contract [or quasi-contractual arrangement] may confer some legal rights under state law, that fact alone need not place all [such arrangements] within federal due process protection."  Unger, 928 F.2d at 1398.  "Although the underlying substantive interest is created by 'an independent' source such as state law, federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause."  Id. (quoting Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 9 (1978) (quoting Roth, 408 U.S. at 577)).

The Third Circuit has acknowledged only two types of contractual arrangements as

_____

[5]Plaintiffs do not allege that they entered into an actual binding contact with the City to redevelop the Site.

creating protected property rights under the Fourteenth Amendment.  The first is "where the contract confers a protected status, such as those characterized by a quality of either extreme dependence as is the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits."  Unger, 928 F.2d at 1399 (internal quotation marks omitted).  "The second . . . type of property interest arises where the contract itself includes a provision that the state entity can terminate the contract only for cause."  Id.

Here, Plaintiffs have alleged neither type of right.  Rather, they insist that they have a protected property right by virtue of the City's Ordinance designating them as redeveloper, which was enacted pursuant to the New Jersey Local Redevelopment and Housing Law, N.J. STAT. ANN. § 40A:12-2.  The Redevelopment Law authorizes municipalities to designate areas in need of redevelopment or rehabilitation and to adopt and implement a redevelopment plan to achieve the goals of redevelopment.   N.J. STAT. ANN. § 40A:12A-4-8.  "[I]n order to carry out and effectuate the purposes of this act and the terms of the redevelopment plan, the municipality may":

> e.    Prepare or arrange by contract for the provision of professional services and the preparation of plans by registered architects, licenses professional engineers or planners, or other consultants for the carrying out of redevelopment projects.
>
> g.    Lease or convey property or improvements to any other party pursuant to this section, without public bidding and at such prices and upon such terms as it deems reasonable, provided that the lease or conveyance is made in conjunction with a redevelopment plan, notwithstanding the provisions of any law, rule or regulation to the contrary.

N.J. STAT. ANN. § 40A:12A-8

The City's designation of Plaintiffs as the redeveloper is a contractual or quasi-

contractual arrangement, pursuant to which the Plaintiffs agreed to redevelop the Site, in part for the benefit of the City, in accordance with the Redevelopment Agreement, in exchange for control of the Site and the income commensurate with the planned development.  Plaintiffs' arrangement with the City falls outside of the kinds of contractual arrangements found to have conferred protectible property interests.  The City did not convey the land comprising the Site to Plaintiffs, nor did the Ordinance provide that the City's designation of Plaintiffs as the redeveloper  was irrevocable absent a showing of cause.  The City's designation of Plaintiffs as the redeveloper also did not confer "protected status" on the Plaintiffs, as is the case with welfare, tenure, and social security benefit recipients.

The Ordinance gave Plaintiffs an expectancy that they would be redeveloping the Site in accordance with the Redevelopment Agreement, but it in no way conferred on Plaintiffs a protectible property interest such that they can invoke the Fourteenth Amendment's due process protections here.  See, e.g., Linan-Faye Constr. Co. v. Housing Auth. of Camden, 49 F.3d 915, 932 (3d Cir. 1995) (declining to find a protectible property interest where the plaintiff, a public housing contractor, had won the bid and contracted with the City to handle a housing modernization project); Omni Behavioral Health v. Miller, 285 F.3d 646, 653-54 (8th Cir. 2002) (finding that the Plaintiff had no property right by virtue of the City's having contracted with it to provide foster care services at a designated facility or by virtue of the City having granted it a license to operate the facility).  To find otherwise would open the door for the wholesale federalization of state public contract law, a result which Unger and Reich do not allow.  See Omni, 285 F.3d at 654 (citing Linan-Faye, 49 F.3d at 932) ("If every disgruntled contractor were allowed to allege a constitutional violation when it lost a government contract, the federal courts

16

would be overrun with state law contract claims").

For these reasons, this Court agrees with Defendants that Plaintiffs lacked a property interest protectible under the Fourteenth Amendment's Due Process Clause. Plaintiffs have failed to state a § 1983 cause of action upon which relief can be granted, and Defendants' motion to dismiss Plaintiffs' § 1983 claim, pursuant to FED. R CIV. P. 12(b)(6), is granted. Moreover, because Plaintiffs lacked a protectible property interest, there is no set of facts they can allege consistent with the Complaint, which might support a § 1983 claim for relief based on purported violations of the Fourteenth Amendment's substantive due process protections. This Court, therefore, must dismiss Plaintiffs' § 1983 cause of action with prejudice.[6]

### 4. Whether Plaintiff Luis Rodriguez Has Alleged Adequately A Cause Of Action For Defamation Under § 1983

Defendants also move to dismiss Plaintiff Luis Rodriguez's cause of action for defamation against Defendant Fajardo, to the extent he seeks relief for defamation, pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983.[7] Defendants specifically argue that Luis Rodriguez's claim must fail because he does not have a liberty interest in his reputation, and because he has failed to allege that Defendant Fajardo was acting under color of state law when he engaged in the allegedly defamatory conduct.

---

[6]Defendants next argue that the Board members cannot be held personally liable under § 1983 because they did not participate in the alleged conduct, and because Plaintiffs' claims against the individual defendants are duplicative of their claims against the Board. Because this Court has found that Plaintiffs' § 1983 claim must be dismissed for failure to allege a protectible property interest, it need not address Defendants' arguments regarding the individual defendants' liability under § 1983.

[7]Luis Rodriguez seeks relief on his defamation claim under both the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983, and under applicable New Jersey law.

As this Court has explained, "[i]n order to state a claim under § 1983, a plaintiff must allege that his constitutional rights were violated by someone acting under color of state law." Jerrytone, 167 Fed. Appx. at 300 (citing West v. Atkins, 487 U.S. 42, 48 (1988)).  The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property without due process of law."  U.S. CONST. AMEND. XIV.

Plaintiff's third cause of action alleges that by knowingly making and causing to be published a false "defamatory statement of fact in which he alleged that Plaintiff Luis F. Rodriguez tried to bribe him with regard to the property at issue," Defendant Fajardo violated Luis Rodriguez's "liberty interest in his reputation," as well as his "property interest which is protected under the Fourteenth Amendment to the United States Constitution."  (Compl., ¶¶ 57-65.)  Nowhere does the Complaint allege that the alleged damage to Luis Rodriguez's reputation and the vaguely asserted loss of a "property interest" are in any way connected.

"Reputational harm can constitute a protected interest when coupled with an additional deprivation of a protected right or interest."  Baraka v. McGreevey, 481 F.3d 187, 208 (3d Cir. 2007) (citing Paul v. Davis, 424 U.S. 693, 711-12 (1976) (holding reputation alone is not a constitutionally protected property or liberty interest)).  In Paul, the Supreme Court specifically emphasized that its holding did "not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause."  Paul, 424 U.S. at 701. The Third Circuit has recognized "some confusion whether the additional 'more tangible interest' must be 'a protectible property interest,' or whether 'something less than a property interest, independently protected by the Due Process Clause, could be [ ] sufficient.'"  Baraka,

482 F.3d at 208-09 (citing <u>Ersek v. Twp. of Springfield</u>, 102 F.3d 79, 83 n. 5 (3d Cir. 1996); <u>Graham v. City of Philadelphia</u>, 402 F.3d 139, 142 n.2 (3d Cir. 2005)).  As of the date this Order is entered, the Third Circuit has yet to definitively set forth what "more tangible interest" is necessary to state a cause of action for defamation under the Fourteenth Amendment and § 1983.

The Complaint is vague as to what "property interest" Luis Rodriguez was actually deprived of as a result of Fajardo's allegedly defamatory conduct.  Defendants' brief, however, clarifies that the "property interest" Luis Rodriguez was allegedly deprived of was his interest in redeveloping the Site pursuant top the Ordinance, i.e., the same purported property interest discussed in the preceding section of this Opinion.  (Defs.' Opp. at 28.)

As this Court has found, Plaintiffs' interest in redeveloping the Site is not a property interest protectible under the Fourteenth Amendment.  Therefore, if the "more tangible interest" required to state a § 1983, Fourteenth Amendment defamation claim must be a "protectible property interest," Luis Rodriguez has failed to state a cause of action for defamation under § 1983 as a matter of law, and his federal defamation cause of action must be dismissed, pursuant to FED. R. CIV. P. 12(b)(6).

If, on the other hand, the "more tangible interest" can be "something less than a property interest, independently protected by the Due Process Clause," <u>Baraka</u>, 482 F.3d at 208, Luis Rodriguez has still failed to state a cause of action for defamation under § 1983.  First, as this Court has noted, Plaintiffs' vague and conclusory description of the "property interest" at issue in the defamation claim is insufficient to put Defendants on notice of exactly what alleged injury Luis Rodriguez seeks to remedy through his claim.  Plaintiffs succinctly allege, "Defendant Rafael J. Fajardo's false published statement infringed on Plaintiff Luis Rodriguez's property

interest which is protected under the Fourteenth Amendment to the United States Constitution."
(Compl., ¶ 64.)  Nowhere is the subject property defined or explained within the cause of action.
That Plaintiffs have clarified their intentions and attempted to remedy this shortcoming in their
brief does not cure the fatal flaw in their Complaint.  Because it is impossible for this Court to
discern from the face of the Complaint what property interest Luis Rodriguez was allegedly
deprived of, this Court cannot find that Luis Rodriguez has stated adequately the "more tangible
interest" necessary to sustain a claim for relief under the Fourteenth Amendment for defamatory
conduct.  See Morse, 132 F.3d at 906 n.8 (district court will accept well-pled allegations as true
for the purposes of the motion, but it will not accept unsupported conclusions, unwarranted
inferences, or sweeping legal conclusions cast in the form of factual allegations); See also FED.
R. CIV. P. 8(a)(2); Conley, 355 U.S. at 45-46 (the claimant must set forth sufficient information
to outline the elements of his or her claims or to permit inferences to be drawn that the elements
exist).  For this reason, Luis Rodriguez's federal claim for defamation must be dismissed,
pursuant to FED. R. CIV. P. 12(b)(6).

Moreover, even if it were clear from the face of the Complaint that the redeveloper
designation was the property interest alleged to be the "more tangible interest" supporting Luis
Rodriguez's defamation claim, the Complaint fails to give any indication of whether there was
any relationship between the alleged defamation of Luis Rodriguez and the City's rescinding of
the redevelopment designation.  It is not sufficient to merely identify a "more tangible interest."
It reasonably follows from the Supreme Court's holding in Paul that the "more tangible interest"
affected must also be caused by the defamatory conduct alleged.  The Paul Court held that the
"stigma" of defamation does not, "apart from [damage to] some more tangible interests such as

20

employment," give rise to a §1983 claim.  424 U.S. at 701.

There is no allegation in the Complaint that Fajardo's allegedly defamatory conduct caused Luis Rodriguez to lose the redeveloper designation, in addition to stigmatizing his personal reputation.  The only allegations concerning causation contend that the Board's lawsuit in state court precipitated the City's revocation of the designation.  (Compl., ¶ 31.)  Plaintiffs cannot sustain a Fourteenth Amendment defamation claim simply by invoking the deprivation of a property interest; that property interest must have been impeded by the defamatory conduct complained of.  Plaintiff Luis Rodriguez, therefore, has failed to state a cause of action for defamation under § 1983.

For all of these reasons, Plaintiff L. Rodriquez has failed to state a cause of action for defamation in violation of § 1983.  Plaintiffs' third cause of action, to the extent it is made under § 1983, is dismissed.

## IV.  <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs' motion for default judgment is denied, and Defendants' motion to dismiss is granted.  Plaintiffs' first cause of action alleging violation of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983 is dismissed with prejudice.  Plaintiffs' Fourteenth Amendment defamation claim, pursuant to 42 U.S.C. § 1983, is dismissed without prejudice.  Plaintiffs' causes of action for tortious interference with a contractual relationship, state law defamation, and violation fo the New Jersey School Ethics Act, remain viable claims in this action.

Dated: July 3, 2007                             s/ Joseph A. Greenaway, Jr.
                                                JOSEPH A. GREENAWAY, JR., U.S.D.J.

21